**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| BRYAN D. C.,                              ) | |
|                                                   ) | |
|                    Plaintiff,               ) | |
|                                                   ) | |
| vs.                                            ) | Case No. 19-CV-688-CVE-JFJ |
|                                                   ) | |
| ANDREW M. SAUL,                      ) | |
| Commissioner of Social Security,   ) | |
|                                                   ) | |
|                    Defendant.             ) | |

<u>**REPORT AND RECOMMENDATION**</u>

This matter is before the undersigned United States Magistrate Judge for a report and recommendation.  Plaintiff Bryan D. C. seeks judicial review of the Commissioner of the Social Security Administration's decision finding that he is not disabled.  For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **AFFIRMED**.

**I.      General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician;

the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)."  20 C.F.R. §§ 404.1521, 416.921.  *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a).  A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process).  To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy.  20 C.F.R. § 404.1520(a)(4)(i)-(v).  If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy.  *Williams*, 844 F.2d at 751.  "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary."  *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the

decision is supported by substantial evidence.  *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See id.*  A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Id.*  A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).  Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.    Procedural History and the ALJ's Decision

Plaintiff, then a 40-year-old male, applied for Title II disability insurance benefits and Title XVI supplemental security income benefits on June 7, 2017, alleging a disability onset date of December 31, 2016.  R. 15, 216-224.  Plaintiff also had filed a previous disability claim, which was adjudicated and dismissed in July 2014 when Plaintiff returned to work.  *See* R. 15, 34-35.  In this case, Plaintiff claimed he was unable to work due to conditions including lower back, hypertension, anxiety, and depression.  *See* R. 237.  Plaintiff's claims for benefits were denied initially on August 23, 2017, and on reconsideration on October 27, 2017.  R. 63-123.  Plaintiff then requested a hearing before an ALJ, and the ALJ conducted the hearing on January 14, 2019.  R. 31-62.  The ALJ issued a decision on February 12, 2019, denying benefits and finding Plaintiff not disabled because he could perform other work existing in the national economy.  R. 15-25.  The Appeals Council denied review, and Plaintiff appealed.  R. 1-3; ECF No. 2.

The ALJ found that Plaintiff's date last insured was December 31, 2016.  R. 17.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 31, 2016.  *Id.*  At step two, the ALJ found that Plaintiff had the following severe impairments: unspecified depressive disorder; and unspecified anxiety disorder.  *Id.*  She found Plaintiff's impairments of hypertension, low back pain, history of crushed right foot, obesity, and history of substance abuse to be nonsevere.  R. 18.  At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments.  R. 18.  In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had mild limitations in the area of adapting or managing oneself, and moderate limitations in the three areas of (1) understanding, remembering, or applying information; (2) concentrating, persisting, or maintaining pace; and (3) interacting with others.  R. 18-19.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: "the claimant can perform simple and detailed (as it relates to clarity, not complexity) tasks (defined as semiskilled).  He can relate to others on a superficial basis.  He can adapt to a work situation."  R. 19.  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  R. 22-23.  Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other unskilled medium work, such as Packager, Laundry Worker, and Dishwasher.  R. 23-24.  The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT").  *Id.*  Based on the VE's testimony, the ALJ concluded these positions

existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled.

## III.   Issues

Plaintiff raises five points of error in his challenge to the denial of benefits: (1) the ALJ failed to fully and fairly develop the record; (2) the ALJ's step-two and step-three analysis was improper, leading to subsequent failures at the remaining steps; (3) the ALJ failed to properly consider whether Plaintiff met or equaled the severity of Listing 12.05; (4) the ALJ's consistency analysis was flawed; and (5) the ALJ's RFC is unsupported by substantial evidence. ECF No. 13.

## IV.   Analysis

### A.   ALJ Adequately Developed the Record

Plaintiff contends the ALJ erred by failing to develop the record through obtaining additional medical evidence regarding Plaintiff's mental and physical functioning. The ALJ has a "basic obligation" in every social security case to develop the record consistent with the issues raised. *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (quoting *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993)). The ALJ's duty "is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts." *Id.* The ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning"; instead, the "standard is one of reasonable good judgment." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997).

Plaintiff argues that the ALJ should have ordered consultative examinations to perform both physical and mental evaluations, because the State agency reviewers indicated in their opinions that consultative examinations were required to obtain "[a]dditional evidence . . . to establish current severity of the individual's impairment(s)." R. 69, 82-83, 99-100, 114-115. The

agency reviewers did not indicate what impairments needed further evaluation, with the reviewers simply noting that, "[p]rior experience indicates that the medical source(s) may be uncooperative or will not provide needed evidence."  R. 70, 83, 100, 115.

Plaintiff further argues the ALJ should have ordered an MRI of Plaintiff's spine and should have developed the record regarding Plaintiff's right foot.  He notes that his prior medical providers did not send medical information.  *See* R. 69, 82, 99, 114 (noting that evidence had been requested from Margaret Stripling, D.O. and Quality Care Medical Center).  At the hearing, Plaintiff's counsel pointed out that treatment records were missing from Dr. Stripling's office, but he stated that he did not think her records were very helpful.  R. 35-36.  Plaintiff's counsel indicated that "you're not going to get really good records out of her," and he suggested that the case proceed in the absence of those records, dating to 2016 and 2017.  *Id.*  Plaintiff's counsel did not request any further consultative examinations or objective testing take place, other than requesting consideration of an IQ test performed in 2013, which the ALJ denied.[1]

The undersigned rejects Plaintiff's arguments and finds that the ALJ fulfilled her duty to develop the record in accordance with the issues raised in this case.  She was not obliged to order further consultative evaluations, physical objective tests, or mental testing.  Even though the agency reviewers recommended consultative examinations, the reviewers were nonetheless able to determine that Plaintiff's physical impairments were nonsevere, and they were able to develop mental RFCs.  *See* R. 70, 75, 83-84, 88, 101, 105-106, 116, 120-121.  The ALJ reviewed these agency opinions, finding their opinions "very persuasive."  R. 22.

Generally, an ALJ has "broad latitude in ordering consultative examinations."  *Hawkins*, 113 F.3d at 1166.  *See* 20 C.F.R. §§ 404.1519a(b), 416.919a(b) (explaining that "[w]e may

---

[1] The ALJ's denial of Plaintiff's counsel's request to exhibit and consider the 2013 IQ testing is discussed further in Part IV.C.

purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim" and providing examples of instances that may require a consultative exam).  Here, Plaintiff points to no material conflict in the medical evidence, inconclusive treatment notes or tests, or untreated diagnoses that require additional explanation.  Most specifically, Plaintiff points to a treatment note from December 2013, in which it was noted he was scheduled to have an MRI of the lumbar spine, but insurance denied coverage.  R. 451.  However, Plaintiff fails to link this remote record, dating to the period of prior adjudication, to his back issues relating to the relevant period beginning December 31, 2016.

While Plaintiff's objective medical history is limited during the relevant period, the evidence in the record for that period includes a September 2017 lumbar x-ray, which the ALJ noted, showing only mild multilevel intervertebral disc space narrowing, and mild upper lumbar and moderate lower lumbar facet arthrosis.  R. 18 (citing R. 478).  Even the records Plaintiff cites elsewhere in the brief regarding his back impairments show that, during the relevant period, his lower back pain was observed as moderate with motion, with muscle spasm and some tenderness, and it was treated only with pain medications.  *See* R. 331, 342, 478, 489, 491-492, 510, 530.  It appears there are no treatment records pertaining to Plaintiff's alleged foot pain, with only two complaints to mental health providers of foot pain, in November 2017 and August 2018.  *See* R. 510 (noting complaints of chronic pain in his back and foot, and that he "can't stand, can't sit, it just hurts at different times"), R. 530 (noting diagnoses of "[n]erve pain in back and feet – untreated" and Plaintiff's request for nerve pain medication).  The ALJ accurately noted that Plaintiff received little treatment for foot pain in the relevant record.  R. 18.

Regarding his mental condition, Plaintiff does not point to any specific records pertaining to his mental health that would require further development, arguing generally that the ALJ should have ordered "psychological, neuropsychological testing for intelligence, depression, and anxiety." ECF No. 13 at 6. However, the ALJ cited to numerous records in establishing Plaintiff's mental status and RFC, including the agency reviewers' opinions, and Plaintiff identifies no specific deficiencies that would require further development. *See* R. 18-22. It is Plaintiff's, not the Commissioner's, burden to provide medical evidence in support of the RFC. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to us that you are . . . disabled."). Moreover, the ALJ did not need a specific "RFC" opinion from a consultative examination to assess Plaintiff's functional limitations. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (explaining that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question"); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("The ALJ, not a physician, is charged with determining a claimant's RFC."); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (explaining that, while an ALJ considers medical opinions in assessing RFC, the final responsibility for determining an RFC is reserved to the ALJ). *See generally Cowan*, 552 F.3d at 1187 (finding "no need" to develop record with consultative exam because "sufficient information existed" for ALJ to make disability determination).

Plaintiff additionally points to a statement the ALJ made during the hearing as evidence that further development of the record was necessary. Specifically, Plaintiff argues that the ALJ's statement indicates she "could not create an RFC regarding Claimant's mental health limitations because there were too few treatment notes of doctors describing Claimant's mental health symptoms and complaints." ECF No. 13 at 5-6. When eliciting the VE's testimony, the ALJ

provided a hypothetical to the VE matching Plaintiff's characteristics and RFC as stated in the decision.  R. 58.  After the VE listed out available jobs in the national economy, the ALJ stated that she looked at various medical records relating to complaints including toothache and chest pains, and she "couldn't really come up with a good hypothetical for RFC or mental," "[b]ecause there wasn't a whole lot of treatment notes and basically complaints."  R. 60.  She then stated that she "wasn't able to formulate a hypothetical" and did not have "any other hypotheticals," even though she "did look at them," and she "was trying really hard."  *Id.*  The undersigned finds this statement is not a clear indication that the ALJ believed further development of the record was necessary.  Whatever the ALJ meant by this statement, she had already propounded an RFC to the VE containing the same mental limitations stated in her decision, and it is possible the ALJ was trying to state that she struggled to develop any *physical* RFC limitations given the limited record. The undersigned does not find that further record development of mental health limitations is warranted based on the ALJ's statement.

The burden to fully develop the record was met in this case, and the ALJ had sufficient information to determine Plaintiff's physical and mental RFC based on treatment records, agency opinions, and other non-medical evidence.  *See generally Cowan*, 552 F.3d at 1187 (finding "no need" to develop record with consultative exam because "sufficient information existed" for ALJ to make disability determination).  Plaintiff's desire for a more developed record is not an adequate reason to re-weigh the evidence or remand an ALJ's decision that is supported by substantial evidence.

In addition, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored, and the ALJ may ordinarily require counsel to identify the issue or issues requiring further

development." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (quotations omitted). Here, Plaintiff was represented by counsel at the hearing but did not challenge the sufficiency of the record at that time, beyond his request for admission of Plaintiff's 2013 IQ testing. Plaintiff's counsel did not request a consultative examination, and he encouraged the ALJ to proceed in the absence of Dr. Stripling's records. *See* R. 35-36. *Cf. Dawkins v. Astrue*, No. CIV-09-125-F, 2010 WL 476710, at *5 (W.D. Okla. Feb. 5, 2010) (finding ALJ failed to properly develop record by not obtaining psychodiagnostic testing "specifically recommended" by consultative psychological examiner, where ALJ had heightened duty to develop record because claimant was represented by non-attorney).

### B.   ALJ's Analysis at Steps Two and Three Was Adequate

Plaintiff argues that, at step two of the analysis, the ALJ improperly assessed his chronic back pain, foot pain, and obesity as nonsevere impairments. Plaintiff further argues the ALJ improperly evaluated his mental impairments at step three. ECF No. 13 at 7-11. The undersigned addresses each of these allegations below in detail.[2]

The undersigned notes that, as an initial matter, Plaintiff's claim of harmful error at step two fails generally. Because the ALJ found Plaintiff had severe impairments and addressed his medically determinable impairments, the issue of whether the ALJ found *all* of Plaintiff's impairments to be severe is legally irrelevant. *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("[F]ailure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe."); *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper

---

[2] Plaintiff also raises a consistency-related error in this section of the opening brief, arguing that the ALJ failed to account for his medication use and side effects. ECF No. 13 at 9. The undersigned addresses this argument below in Part IV.D.

conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

### 1.    Chronic Back Pain and Crushed Right Foot

Plaintiff argues that, at step two of the analysis, the ALJ failed to adequately consider his impairments of chronic low back pain and crushed right foot.  Regarding Plaintiff's low back pain, the ALJ found the impairment to be nonsevere, citing a September 2017 x-ray of the lumbar spine that revealed mild multilevel intervertebral disc space narrowing, and mild upper lumbar and moderate lower lumbar facet arthrosis.  R. 18 (citing R. 478).  The ALJ further noted that Plaintiff testified he has not received a recommendation for surgery.  *Id.*  Regarding Plaintiff's history of crushed foot, the ALJ found the impairment nonsevere, noting that Plaintiff received little treatment in the relevant record.  *Id.*

Plaintiff contends the ALJ diminished the severity of both impairments, pointing to various treatment records documenting Plaintiff's complaints of back pain and foot pain and observations of mild to moderate back pain, tenderness, and muscle spasm.  Many of these records fall outside the relevant period.  *See* R. 424, 433, 447-449, 451, 455-456, 458-459, 461-463, 466-467, 472-473, 475 (treatment records dating from 2013 to 2015); R. 368, 399, 478, 487, 491-492, 510, 530 (records dating from 2017 to 2018).  These records show that Plaintiff was treated with medications for his chronic back pain, and in 2014 Plaintiff indicated he was "not desirous of seeing a surgeon" for his low back pain (R. 459).  Plaintiff points to no records indicating that his back pain caused any work-related functional limitations.  Indeed, in November 2014, Plaintiff indicated that he experienced increased pain doing a job with more manual activity, but it was "still not too bad." R. 461.  Plaintiff points out that, when his doctor forced him to choose, he chose pain medication over anxiety medication in October 2017, but Plaintiff fails to note that at that visit, Plaintiff stated

he was not taking the anxiety medication routinely, and it would "not be a problem" to taper off the anxiety medication.  R. 491-492.  The undersigned identifies no error.

Plaintiff further argues that the case should be remanded, because the ALJ noted that Plaintiff did not receive a recommendation for back surgery as part of her step-two analysis of Plaintiff's low back pain.  R. 18.  However, the ALJ's notation does not render the entire step-two analysis legally deficient or render her conclusion that the back impairment was nonsevere otherwise unsupported.  Notably, the agency medical reviewers also found Plaintiff had no severe physical impairment after reviewing the available medical evidence.  R. 70, 83-84, 101, 116.  Plaintiff also points to no authority to indicate any error in this regard would be reversible error, as the ALJ went on to analyze the remaining steps.  *See Carpenter*, 537 F.3d at 1266.

Plaintiff also points to no records demonstrating functional limitations resulting from his foot impairment.  Records indicate that Plaintiff had open reduction internal fixation surgery on his foot in 2002, more than a decade before the alleged onset date.  *See, e.g.*, R. 472.  In the available records, it appears Plaintiff complained of foot pain at only two mental health visits, in November 2017 and August 2018.  R. 530 (mental health provider noted in November 2017 that Plaintiff had been diagnosed with "[n]erve pain in back and feet – untreated," and Plaintiff requested Neurontin for "my nerve pain," which was deferred to primary care), R. 510 (mental health provider noted in August 2018 that Plaintiff denied major medical issues and reported excellent overall physical health, but he reported "chronic pain in his back and his foot," stating he "can't stand, can't sit, it just hurts at different times").  *See also* R. 399 (mental health provider noted in June 2017 that Plaintiff reported having back pain from a past injury and arthritis in his right foot), R. 368 (mental health provider noted in June 2017 that Plaintiff reported past medical history of chronic back and foot pain, and arthritis).  While Plaintiff reported difficulty with

12

standing to a mental health provider, it appears he did not report any foot problems to his other health care providers or seek any treatment for the alleged foot pain.  It is not the diagnosis, but the resulting functional limitations that determine disability.  *See Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995).  Therefore, the undersigned identifies no error regarding the ALJ's assessment of Plaintiff's history of crushed foot.

### 2.    Obesity

Plaintiff argues the ALJ committed reversible error at step two by failing to properly assess his obesity, which the ALJ found to be a nonsevere impairment.  An ALJ must consider the effects of obesity as part of the RFC determination.  *See* Social Security Ruling ("SSR") 02-01p, 2000 WL 628049 (Sept. 12, 2002).[3]  Obesity can affect "exertional, postural, and social functions," and "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment."  *Id.*  Accordingly, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and the ALJ "will evaluate each case based on the information in the case record."  *Id.*  The obesity consideration may be "subsumed within the discussion of [a claimant's] other medical conditions."  *Razo v. Colvin*, 663 F. App'x 710, 716 (10th Cir. Oct. 21, 2016).

Here, the ALJ found obesity was a nonsevere impairment at step two.  R. 18.  In making this determination, the ALJ noted that Plaintiff's body-mass index ("BMI") on August 7, 2018, was 40.1.  R. 18 (citing R. 489).  She further noted that, because Plaintiff's other physical impairments are nonsevere, "obesity only mildly attributes [sic] to their effects."  *Id.*

---

[3] SSR 02-01p was rescinded effective May 20, 2019.  However, a reviewing court should apply SSR 02-01p if it remained in effect at the time of the ALJ's decision, as was the case here.  *See* SSR 19-2p, 2019 WL 2374244, at *5 n.14 (May 20, 2019).

Plaintiff argues the ALJ should have expressly considered the effect of Plaintiff's obesity on his functioning.  However, Plaintiff cites to no records in which a medical provider attributed any additional mental or physical functional limitations due to obesity.  Plaintiff points to no specific records to suggest that the ALJ insufficiently considered his obesity.  *See Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 798 (10th Cir. 2013) (finding no error in ALJ's obesity analysis where "there is no record indication of any functional limitations from [the claimant's] obesity or of any impairments possibly caused or exacerbated by her obesity that are inconsistent with the RFC").  Accordingly, Plaintiff's argument fails.

The undersigned finds the ALJ's discussion of obesity was sufficient.  The ALJ clearly acknowledged and addressed Plaintiff's obesity at step two, but nonetheless found Plaintiff could perform work at all exertional levels.  The diagnosis of obesity, even morbid obesity, does not necessarily translate into functional limitations.  *See Johnson v. Comm'r, SSA*, 764 F. App'x 754, 758 (10th Cir. 2019) (noting that SSR 02-01p "does not mandate any additional restrictions or a finding of disability" based on a claimant's obesity).

### 3.    Mental Impairments

Plaintiff contends that the ALJ erred by not explicitly incorporating her finding of step-three "moderate" mental limitations in the area of concentrating, persisting, or maintaining pace into the RFC assessment.  R. 19.  However, an ALJ is not necessarily bound by her step-three findings when determining a claimant's RFC.  *See* SSR 96-8p, 1996 WL 374184, at \*4; *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) ("The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment.").  The ALJ explained this legal principle in the decision.  R. 19 (stating that the mental limitations identified in the "paragraph B"

functional criteria are not an RFC assessment but are used to rate the severity of mental impairments at steps two and three, and the mental RFC "requires a more detailed assessment").

Here, the ALJ accommodated Plaintiff's difficulties in concentration by limiting him to only simple and clarity-detailed semiskilled tasks, and relating to others on a superficial basis.  R. 19.  In reaching this determination, the ALJ discussed numerous records addressing Plaintiff's mental condition.  *See* R. 18-22.  The ALJ was not required to expressly include additional limitations regarding concentration, persistence, or pace in the RFC.  *See* SSR 96-8p (stating that the mental RFC determination requires a "more detailed assessment" of the various functions contained in the broad mental limitation categories listed at steps two and three).  Plaintiff fails to demonstrate that his mental limitations were more severe than the ALJ indicated in the RFC.

Plaintiff further contends that the ALJ made her "paragraph B" mental findings "without medical support."  ECF No. 13 at 10.  Plaintiff again points to the ALJ's statement at the hearing that she "couldn't really come up with a good hypothetical for the RFC or mental," "[b]ecause there wasn't a whole lot of treatment notes and basically complaints."  R. 60.  However, as explained above in Part IV.A, the ALJ's stray comment does not indicate error or require reversal, given that she had already propounded an RFC hypothetical to the VE that matched the final mental RFC.  R. 58.  In addition, the ALJ supported her "paragraph B" findings in the decision by citing to numerous medical records supporting those findings.  R. 18-19 (citing R. 331, 369-370, 408, 417, 486, 524-525, 528, 531).  Therefore, Plaintiff's claim that the ALJ's determination was "without medical support" is groundless.

### C.    ALJ Properly Considered Whether Plaintiff Met or Equaled a Listing

Plaintiff argues the ALJ improperly rejected IQ testing data from an evaluation Plaintiff underwent in August 2013.  At the hearing, Plaintiff's counsel requested that the ALJ exhibit and

consider the IQ testing results even though they dated to August 2013, more than three years prior to the alleged onset date of December 31, 2016. R. 34. The ALJ denied counsel's request, because that testing was part of a prior disability claim that had been previously adjudicated on July 1, 2014. R. 15, 34-35. Plaintiff contends that, if the ALJ had considered this testing data, she could reasonably have found Plaintiff met or medically equaled the severity of Listing 12.05 (Intellectual Disorder).

The undersigned finds that the ALJ's exclusion of these testing results was error. The Tenth Circuit has held that, "even if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be *considered* by the ALJ." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (emphasis added). This requirement may result in reversal, where an ALJ wholly ignored or refused to consider prior medical opinions regarding an ongoing condition alleged to be disabling in the claimant's pending disability proceeding. *See, e.g., Teresa V. N. v. Saul*, 421 F. Supp. 3d 1179, 1184 (N.D. Okla. 2019) (finding reversible error where ALJ failed to consider medical opinion of doctor who conducted mental status exam on claimant during period of prior adjudication); *Schoonmaker v. Berryhill*, No. CIV-16-1145-R, 2017 WL 4422597, at *3-4 (W.D. Okla. Oct. 5, 2017) (finding reversible legal error where ALJ ignored mental health opinion pre-dating alleged onset date, and where ignored medical opinion did not involve "some discrete easy-cure event that the ALJ would have necessarily discounted in her later disability determination"). *See generally Farrell v. Colvin*, No. 2:15-CV-09229-JTM, 2016 WL 4128452, at *5 (D. Kan. Aug. 3, 2016) (noting that records from before amended onset date "are nonetheless part of Plaintiff's case record and should be considered").

Here, the record at issue pertained to Plaintiff's IQ score. Although the IQ testing document is not available in the record, Plaintiff's counsel represented at the hearing that the testing showed a verbal score of 76 and a full-scale IQ of 71, "which is 3%" and "in the borderline range of intellectual functioning." R. 34. The ALJ expressly refused to consider this testing, stating that it was dated August 27, 2013, and "it was probably previously adjudicated in the dismissal from Judge Weary, 7/1 of '14." R. 34-35. In the decision, the ALJ affirmed her denial of Plaintiff's counsel request to consider this evidence. R. 15. *Hamlin* and its progeny indicate that an unfavorable decision by one ALJ does not prevent a subsequent ALJ from reviewing medical records considered by the former ALJ. The IQ testing record has not been "adjudicated"; rather, the prior period of disability has. The Court finds the ALJ committed legal error by refusing to consider the August 2013 IQ testing results.

The undersigned rejects the Commissioner's argument attempting to justify the ALJ's refusal to consider the IQ testing. *See* ECF No. 15 at 11. The Commissioner argues that Plaintiff is attempting to create a "backdoor for resubmitting evidence" from the period of prior adjudication. *Id.* However, the Commissioner does not cite, and the undersigned is unaware of any authority supporting the proposition that an ALJ may refuse to consider a medical record, simply because it was relevant to a previously adjudicated period of disability. Not only *may* the ALJ consider the medical records for purposes of adjudicating a new alleged period of disability, the ALJ is *required* to do so if they relate to an ongoing, relevant medical condition or impairment. *See Hamlin*, 365 F.3d at 1215. The Commissioner presents no evidence suggesting that Plaintiff's IQ may have changed since August 2013, and Plaintiff's current disability case relates to a different time period than the one that was previously adjudicated. An ALJ may not refuse to consider a

medical record simply because it was relevant to a previously adjudicated period of disability. Accordingly, the Commissioner's jurisdictional argument is unavailing.

Although the ALJ's refusal to consider the IQ testing was error, the undersigned concludes the error was harmless with respect to Plaintiff's allegations. Under this allegation of error, Plaintiff argues that remand is required for the ALJ to address whether Plaintiff meets the criteria for a per se disabling impairment under Listing 12.05. ECF No. 13 at 11-12. After reviewing the criteria for this listing, the undersigned concludes that no reasonable factfinder could find Plaintiff meets or medically equals this listing.

Listing 12.05 reads as follows:

**12.05 Intellectual disorder** (see 12.00B4), satisfied by A or B:

**A.** Satisfied by 1, 2, and 3 (see 12.00H):

1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

**B.** Satisfied by 1, 2, and 3 (see 12.00H):

1. Significantly subaverage general intellectual functioning evidenced by a or b:

a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

a. Understand, remember, or apply information (see 12.00E1); or
b. Interact with others (see 12.00E2); or
c. Concentrate, persist, or maintain pace (see 12.00E3); or
d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. Pt. 404, Subpart P, App. 1 (eff. January 17, 2017).

Plaintiff does not explain which part of Listing 12.05 he could possibly meet or equal, and the undersigned finds that Plaintiff could not satisfy any part of the listing.  Given that he underwent IQ testing, he could not possibly satisfy Part A, which requires cognitive inability to function at a level required to participate in standardized IQ testing.  Regarding Part B, Plaintiff's full-scale score of 71 and verbal score of 76 mean that he could not possibly satisfy either of elements (a) or (b).  As a result, the undersigned cannot find harmful error occurred related to evaluation of Listing 12.05.  *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (harmless error doctrine applies only in the "exceptional circumstance" where the court could confidently say that no reasonable administrative factfinder could have resolved the factual matter in any other way).  This is a rare case where the error was clearly harmless, based on the IQ scores and the listing's requirements.

### D.     ALJ's Consistency Analysis Was Supported by Substantial Evidence

Plaintiff argues the ALJ's consistency analysis was improper.  In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record.  SSR 16-3p, 2016 WL 1119029, at *7 (Mar. 28, 2016).  If they are

consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).[4]

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). As long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id*.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical

---

[4] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

and other evidence in the record.  R. 21.  Plaintiff alleges the ALJ's analysis was insufficient, because (1) her analysis amounts to mere "meaningless boilerplate," (2) she failed to address Plaintiff's physical health and pain, (3) his activities of daily living are minimal, and (4) she failed to discuss Plaintiff's history of medication use and related side effects.  ECF No. 13 at 9-10, 12-14.  Plaintiff cites to no part of the record in support of his testimony, citing only to the testimony itself.

The undersigned finds that the ALJ's consistency analysis was proper.  The ALJ's consistency analysis was more than mere boilerplate.  In reaching her conclusion regarding consistency, the ALJ noted that Plaintiff's statements about the intensity, persistence and limiting effects of his mental symptoms were inconsistent with the objective evidence.  R. 21.  She noted that Plaintiff received inpatient treatment once in the relevant record, in March 2017, after using methamphetamines and not sleeping for several days.  *Id.*  After a few days of group therapy, Plaintiff was discharged, reporting that he felt "very well."  *Id.*  She discussed Plaintiff's later mental health treatment history, which included medication that reportedly helped improve his mood and sleeping.  In August 2018, Plaintiff reported progress with symptoms with the use of medication.  The ALJ noted that Plaintiff has pursued "only medication, not therapy or counseling, to address his mental health symptoms," and he has "reported benefit and reduction of symptoms with medication."  R. 22.  *See* 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v) (Commissioner must consider medication effectiveness and other treatments for pain relief when considering statements regarding symptoms).

The ALJ also referred to the more detailed step-two findings indicating "there is little objective manifestation of the claimant's symptoms," as his mental status findings were frequently normal, with fair to normal concentration.  R. 22.  The ALJ additionally cited Plaintiff's testimony

that he looked after his grandmother, could take care of his personal needs, helped around the house, and watched television. *Id.* The ALJ concluded that there was "little evidence the claimant's symptoms are as severe or limiting as he alleged." *Id.*

Regarding Plaintiff's physical condition, the ALJ addressed Plaintiff's physical impairments at step two, finding them all to be nonsevere. R. 18. Plaintiff's treatment notes throughout the record also reflect largely normal physical examinations, mild objective findings, and conservative treatment. R. 417, 478, 489-492. *See Megginson v. Astrue*, 489 F. App'x 260, 263 (10th Cir. 2012) (routinely normal clinical examination findings undermined claimant's allegations). The ALJ noted Plaintiff's allegation that his lower back pain prevented him from working. R. 20. However, the ALJ appropriately found that Plaintiff's allegations of disabling pain conflicted with his statements about his activities of daily living, including looking after his grandmother; making lunch and dinner for himself, his mother, and his grandmother; washing dishes; taking out the trash; caring for the yard and his dog; and tending to his own personal hygiene. R. 20, 22. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (ALJ may consider a claimant's activities); *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (ALJ appropriately found a claimant's description of her daily activities did not indicate significant limitations, where claimant could care for herself, her home, and her children, and she could drive, shop, handle finances, garden, visit friends, and eat out).

Regarding Plaintiff's activities, the ALJ accurately listed Plaintiff's activities as he reported in his testimony and throughout the record. *See* R. 20. It is proper for the ALJ to consider Plaintiff's activities in evaluating his complaints. *See* SSR 16-3p, at *7 (stating that ALJ should consider claimant's daily activities as part of consistency analysis). The ALJ was not required, as

Plaintiff alleges, to find a direct correlation between his activities and the demands of full-time work.

Regarding Plaintiff's medication use, Plaintiff contends the ALJ failed to discuss that Plaintiff was consistently prescribed medications for muscle spasms, pain, depression, and anxiety, including narcotic medications. ECF No. 13 at 9-10. In support, Plaintiff cites "*id.*, *infra*," but it is entirely unclear what evidence Plaintiff is citing. In any event, Plaintiff's argument is groundless, because the ALJ discussed Plaintiff's history of medication use for mental symptoms throughout the decision. *See* R. 19, 21-22. Indeed, the ALJ indicated that Plaintiff "frequently reported improvement in symptoms due to medication use." R. 19 (citing R. 498-499, 524-526, 527-529). As for his physical symptoms, it appears Plaintiff took opioid pain medication for his back pain within the relevant period (*see, e.g.*, R. 491), but it is unclear what side effects Plaintiff alleges occurred from taking his pain medication. Plaintiff reported in a July 2017 function report that he experienced tiredness/sleepiness/drowsiness from his medications Trazodone and Lortab, but it is unclear whether he reported such symptoms to his medical providers or that they would affect his ability to work. *See Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) (finding claimant's failure to report symptoms to physician was appropriate factor to support credibility/consistency determination). Elsewhere in his briefing, Plaintiff also refers to other records regarding pain medications, but they fall far outside the relevant period. *See, e.g.*, R. 475 (in May 2015, Plaintiff called physician's office repeatedly for opioid pain medications and chased down a staff member for a prescription).

Plaintiff's consistency arguments are unavailing, and the ALJ's discussion of Plaintiff's subjective complaints and the objective evidence satisfies SSR 16-3p. Plaintiff only asks the Court to re-weigh the evidence, which is not permitted. *See Hackett*, 395 F.3d at 1172; *Lax v. Astrue*,

489 F.3d 1080, 1084 (10th Cir. 2007) (explaining that the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo") (quotation and alterations omitted).

### E.     Plaintiff's RFC Is Supported by Substantial Evidence

In this allegation of error, Plaintiff simply repeats his arguments regarding the ALJ's failure to develop the record and the ALJ's failure to find severe physical impairments, re-framing them as errors in determining the RFC.  As explained above in Parts IV.A-B, the undersigned identifies no error at step two or in developing the record, with the exception of the 2013 IQ testing.  As explained above in Part IV.C, the ALJ's exclusion of the IQ testing was harmless error, as it relates to whether Plaintiff met or medically equaled Listing 12.05.[5]  In accordance with these findings, the undersigned identifies no error in the physical RFC or in the hypothetical question to the VE relating to physical impairments or in developing the record.

### RECOMMENDATION

The undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED.**

### OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation.  Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by March 5, 2021.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

---

[5] Plaintiff does not allege any harmful error in formulating the RFC related to exclusion of the IQ testing evidence, and the undersigned finds any such argument to be waived. *See Berna v. Chater*, 101 F.3d 631, 632-633 (10th Cir. 1996) (finding that "waiver may result from the disability claimant's failure to . . . raise issues before the magistrate judge") (quotation omitted).

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

     **SUBMITTED** this 19th day of February, 2021.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**