UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRYAN D. C.., | ) |
| | ) |
|          **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 19-CV-0688-CVE-JFJ |
| | ) |
| ANDREW M. SAUL, | ) |
| **Commissioner of Social Security** | ) |
| **Administration,** | ) |
| | ) |
|          **Defendant.** | ) |

## OPINION AND ORDER

Now before the Court is the report and recommendation of a magistrate judge (Dkt. # 19) recommending that the Court affirm the decision of the Commissioner of the Social Security Administration (Commissioner) denying social security benefits to plaintiff. Plaintiff has filed a timely objection (Dkt. # 20) to the report and recommendation and defendant has filed a response (Dkt. # 21).

### I. BACKGROUND

On March 27, 2017, plaintiff was admitted to Tulsa Center for Behavioral Health for "unspecified psychosis," "methamphetamine abuse," and "cannabis abuse." Dkt. # 10, at 334. His mother alleged he had made suicidal threats and homicidal threats to her and her son. Plaintiff was discharged on March 30, 2017, after having being diagnosed with "amphetamine depressive disorder," "severe amphetamine use disorder," and "unspecified anxiety disorder," among other things. Id. at 335.

On June 2, 2017, plaintiff visited Family & Children's Services clinic to address his mental health issues. Id. at 357. That day, healthcare providers administered several screening tests,

including "DSM-5 PHQ-Modified, GAD-7, and PCL-5." Id. at 399.  On June 23, 2017, plaintiff returned to Family & Children's Services and was diagnosed with major depressive disorder by J. Bryan Cates, D.O. Id. at 406-07.  He also received a secondary diagnosis of severe substance abuse disorder. Id.

Plaintiff submitted an application for disability insurance benefits on June 7, 2017, alleging he had been disabled since December 31, 2016. Id. at 19.  Plaintiff also protectively filed for supplemental security income. Id.  Plaintiff's application stated that his ability to work was limited by lower back pain, hypertension, anxiety, and depression. Id. at 241.  Plaintiff's claim for disability was denied initially and upon reconsideration. Id. at 81, 112.

In both denials, the reviewing physicians noted that a consultative exam (CE) was needed because "[a]dditional evidence is required to establish [the] current severity of the individual's impairment(s)." Id. at 73, 103-104.  Both denials state that plaintiff's medical sources were not contacted to perform plaintiff's CE because "[p]rior experience indicates that the medical source(s) may be uncooperative or will not provide needed evidence." Id. at 74, 104.  Both reviewing physicians discussed plaintiff's medical records from his three-day stay at the Tulsa Center for Behavioral Health for mental health and drug-related issues.  They also summarized his treatment notes from the Family and Children's Services, but did not address his diagnoses of major depressive disorder and severe substance abuse disorder. Id. at 76.  Both denials state that "there is no indication that there is a medical opinion from any medical source." Id. at 79, 111.

After receiving the denials, plaintiff requested a hearing before an ALJ.  Plaintiff's hearing was held on January 14, 2019. Id. at 19.  Plaintiff was represented by counsel at the hearing. Id.

During the hearing, the ALJ questioned a vocational expert (VE) about potential hypotheticals relating to plaintiff's capabilities. He asked the VE to

> assume someone of the same age, education and past work as [plaintiff]. Assume any physical impairments that they have are not severe enough to interfere with the ability to perform work-related activities. Mentally, this person has the ability to perform simple and detailed tasks. Detailed tasks would be defined as semi-skilled. He can relate to others on a superficial basis. And then lastly, he can adapt to a work situation.

Id. at 62.

The VE asked the ALJ for clarification by asking whether she was "using detailed as complex or detailed as clarity." Id. at 63. The ALJ responded: "Hard for me to define what the doctor's [sic] write. We'll say clarity." Id. The VE stated that a person with those limitations would not be able to perform plaintiff's past work, but that there would be jobs he could perform in the national economy. Id.

The ALJ then stated that, after reviewing plaintiff's medical records, she "couldn't really come up with a good hypothetical for RFC or mental. Because there wasn't a whole lot of treatment notes and basically complaints. So, I wasn't able to formulate a hypothetical. So, I don't have any other hypotheticals. I did look at them. I was trying really hard, but –" Id. at 64.

Immediately after the ALJ made the statement above, counsel for plaintiff questioned the VE. He asked the VE whether someone who was "off-task 20% of the time" could be employed in plaintiff's past work or any other work. Id. at 64. The VE stated that limitation "would indicate that the individual could not maintain a regular job assignment. They would not be able to stay on-task for the needed time." Id. at 65. The ALJ then concluded the hearing.

After the hearing, the ALJ issued a decision assessing the medical records plaintiff provided, as well as plaintiff's testimony and the testimony of the VE. The ALJ reviewed that information in conjunction with the five step process outlined to evaluate whether plaintiff is disabled. See 20 C.F.R. §§ 404.1520(a) and 416.920(a) (describing the five-step process). Prior to engaging in her analysis, the ALJ noted that plaintiff requested that IQ testing from plaintiff's previous request for disability be added to the record in this case. The IQ testing occurred in 2013, and was part of a disability application that was denied in 2014. The ALJ denied the request. Id. at 19.

In her decision, the ALJ first found that plaintiff had not engaged in substantial gainful activity (SGA) since the alleged onset of disability. Id. at 21. Next, at step two of her analysis, the ALJ found plaintiff had two severe impairments–unspecified depressive disorder and unspecified anxiety disorder–that significantly limited his ability to perform basic work activities. Id. The ALJ also found plaintiff had non-severe impairments, including hypertension, low back pain, a crushed right foot, obesity, and a history of substance abuse. Id. After noting those impairments, the ALJ found that neither the impairments, nor the combination of impairments, met or exceeded the requirements to establish an impairment in the Listings of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. In so finding, the ALJ placed specific emphasis upon "Anxiety and obsessive-compulsive disorders" and "Depressive, bipolar and related disorders." Id.

The ALJ went on to state that the severity of the plaintiff's mental impairment did not satisfy the "paragraph B" criteria. The ALJ found plaintiff had shown a moderate limitation in three areas: "understanding, remembering, or applying information," "interacting with others," and concentrating, persisting, or maintaining pace." Id. at 22-23. She cited plaintiff's application, medical records, and the agency denials in support of her finding. The ALJ found that plaintiff had

a mild limitation in adapting and managing oneself. Id. at 23. Because plaintiff's mental impairment did not cause at least two "marked" limitations or one "extreme limitation" the "paragraph B" criteria were not satisfied. Id. The ALJ then found that the plaintiff did not satisfy the "paragraph C" criteria. Id.

After finding that plaintiff did not meet or equal a listing at step three, the ALJ proceeded to step four of the analysis and found that plaintiff had the residual functional capacity (RFC) to "perform a full range of work at all exertional levels," but that plaintiff could only perform simple and detailed (as it related to clarity, not complexity) tasks (defined as semi-skilled)." The ALJ further added that plaintiff "can relate to others on a superficial basis" and "can adapt to a work situation." Id. In support of her determination, the ALJ summarized the evidence in the record. Id. at 23-26.

In that summary, the ALJ stated that she considered "all symptoms to the extent which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. [§§] 404.1529 and 416.929 and SSR 16-3p." Id. at 24. The ALJ noted that, per the two step process of considering the plaintiff's symptoms, she must first determine whether there was an underlying medically determinable physical or mental impairment that could reasonably produced plaintiff's symptoms, and then evaluate the intensity, persistence, or functionally limiting effects of symptoms to determine the extent they limit plaintiff's functional capacity to work. Id. When considering plaintiff's RFC at this stage, the ALJ noted that where the limitations or symptoms are not supported by medical evidence, the ALJ may rely on other evidence in the record to determine plaintiff's limitations. Id.

The ALJ then detailed plaintiff's medical history. She noted that plaintiff had not used illegal drugs since 2017, when he lost his job after failing a drug test. Id. She stated that plaintiff suffers from depression, and takes depression and anxiety medication. She also noted that plaintiff watches his grandmother and completes some activities of daily living (ADLs).

The ALJ then stated that "[a]s for medical opinion(s) and prior administrative medical finding(s), I will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from [plaintiff's] medical sources." Id. at 26. Thereafter, the ALJ found the agency doctor's findings regarding plaintiff's mental health "very persuasive" as they were consistent with "the paragraph B criteria," plaintiff's reports to Family & Children's Services, and plaintiff's stated ADLs. Id. The ALJ did not discuss the diagnoses, evaluations, or screening test results provided via Family & Children's Services, or accord them any weight.

At steps four and five of the analysis, the ALJ determined that plaintiff could not perform his past relevant work but that there were jobs available in the regional and national economies that plaintiff could perform with his RFC. Id. at 26-27. Based on this finding, the ALJ determined that plaintiff was not disabled. The Appeals Council found no basis to change the ALJ's decision and denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Id. at 5. Plaintiff filed this case requesting judicial review of the denial of his claim for benefits, and the matter was referred to a magistrate judge for a report and recommendation.

Plaintiff raised five objections in his appeal: (i) the ALJ failed develop the record; (ii) the ALJ's analysis at step-two and step-three was improper; (iii) the ALJ improperly excluded the results

6

of plaintiff's IQ test from consideration; (iv) the ALJ's consistency analysis was improper; and (v) the ALJ's RFC lacks substantial evidence. Dkt. # 19, at 6.

The magistrate judge found that the ALJ adequately developed the record as the state physicians were "able to determine that [p]laintiff's physical impairments were nonsevere, and they were able to develop mental RFCs." Id. Next, the magistrate judge found that the ALJ's step two and three analysis was proper. Id. at 10-14. Third, the magistrate judge found that it was reversible error to exclude plaintiff's IQ records from consideration. However, the magistrate judge found that the plaintiff did not establish that his results qualified as a listing under 20 C.F.R. pt. 404, Subpt. P, App. 1 § 12.05 (intellectual disorder), and so any error in excluding them was harmless. Id. at 15-19. As a result, the error did not require remand. Id. at 19. Finally, the magistrate judge found that the ALJ's consistency analysis was proper, and her decision was supported by substantial evidence. Accordingly, the magistrate judge recommends that the Commissioner's decision be affirmed. Id. at 24.

## II. LEGAL STANDARD

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. The parties may object to the magistrate judge's recommendation within 14 days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). If a party objects, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

In reviewing an objection to a social security benefits determination, this Court is limited to determining whether the ALJ has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). The ALJ's "failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." Jensen v. Barnhart, 436 F.3d 1163, 1165 (10th Cir. 2005). Reversal is also appropriate where the ALJ fails to support his decision with substantial evidence. A decision is not supported by substantial evidence if the decision does not rest on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154, (2019). Even if a court might have reached a different conclusion, the ALJ's decision stands if it is supported by substantial evidence. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

"On judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" Biestek,139 S. Ct. at 1153 (quoting 42 U.S.C. § 405(g)). A court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). "The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision." Travas M.P. v. Saul, No. 18-CV-0663-CVE-JFJ, 2020 WL 5203592, at *3 (N.D. Okla. Sept. 1, 2020) (citing Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994)).[1]

---

[1] This and other unpublished decisions are not precedential, but they are cited herein for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

### III. ANALYSIS

Plaintiff raises three objections to the magistrate judge's report and recommendation. First, plaintiff argues the magistrate judge erred by finding that the ALJ's development of the record was adequate. Dkt. # 20, at 2-8.[2] Next, plaintiff argues ALJ did not perform "[s]teps 2 and 3 properly under law," because the ALJ did not consider records from 2013 relating to plaintiff's foot and back in evaluating whether these injuries were severe or non-severe. Id. at 8-9. Finally, plaintiff argues that the error committed by the ALJ in refusing to consider plaintiff's IQ scores from 2013, "is not harmless error as it is not for this Court to determine how the facts meet or equal a listing." Id. at 9. After reviewing the record and the objections, the Court finds that plaintiff's allegation that the ALJ did not adequately develop the record as to plaintiff's mental health impairments is a valid objection.

"The claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2007). Thereafter, "the ALJ has a duty to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.'" Wall v. Astrue, 561 F.3d 1048, 1063 (10th Cir. 2009) (quoting Flaherty, 515 F.3d at 1071). "The duty to develop the record is limited to 'fully and fairly develop[ing] the record as to material issues.'" Hawkins v. Chater, 113 F.3d 1162, 1168 (10th Cir. 1997) (quoting Baca v. Department of Health & Human Servs., 5 F.3d 476, 479–80 (10th Cir. 1993)). "It would not be reasonable, however, to expect a claimant to

---

[2] Although the first objection to the report and recommendation objects primarily to the ALJ's inadequate development of the record, plaintiff plainly argues there was a lack of substantial evidence for the ALJ's decision (id. at 5), and the Court finds that the substantial evidence argument is adequately raised and is intertwined with the failure to develop the record.

demonstrate that evidence from a consultative examination, which has yet to be administered, would necessarily be dispositive." Id. at 1169. "[T]he ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." Id. Thus, the relevant issue before this Court is whether the plaintiff met his burden to insure there is sufficient evidence of a reasonable possibility that a disability exists, and that a consultative exam would be of material assistance in resolving the issue of disability.

Here, plaintiff argues that the ALJ failed to explore the full extent of his mental impairments with formal testing even though plaintiff's evidence established the "reasonable possibility" that a new consultative examination could "reasonably be expected to be of material assistance in resolving the issue of disability." Hawkins, 113 F.3d at 1167. Specifically, plaintiff states he demonstrated the extent of his mental health impairments warranted further development by the ALJ, based on the evidence that he "was hospitalized for mental health problems in 2017, continued to report severe depression and anxiety symptoms, his treating provider [Dr. Cates] observed depressed mood, and an objective psychological screening instrument demonstrated [plaintiff] experienced moderate-severe anxiety symptoms." Dkt. # 20, at 5.

Plaintiff's complaints of mental health problems are, at least in part, supported by medical diagnoses.[3] However, this Court's disagreement with the weight the ALJ assigned those diagnoses, or considered them in conjunction with plaintiff's symptoms, does not warrant remand. Bowman, 511 F.3d at 1272. Here, the issue is whether an additional examination would prove useful to the

---

[3]   For example, Dr. Cates diagnosed plaintiff with major depressive disorder and severe substance abuse disorder on June 23, 2017. Dkt. # 10, at 406-07.

assessment of disability. In this case, the Court finds it would. Here, in effect, the ALJ found the agency physician reports that a CE was required to be "very persuasive," but ordered no such examination. It is difficult to reconcile the ALJ's contention that the record was fully and fairly developed, with her reliance on state agency physicians' reports that a CE is required to obtain additional information.

The issue is compounded by the ALJ's failure to explain why she did not agree with state agency physicians' assessments that CEs were required, and her failure to address other gaps in those reports.[4] The absence of the evidence required to determine the extent of plaintiff's mental disability is further highlighted by the ALJ's struggle to create a hypothetical that she believed would adequately describe plaintiff's mental limitations at the hearing. Dkt. # 10, at 64.

In addition, the ALJ's discussion of plaintiff's mental health impairments was not supported by substantial evidence. Plaintiff argues that "[u]nder regulation and law, the ALJ was required to explain, with support, the conflict in the evidence between [plaintiff's] treating providers' objective written reports of [plaintiff's] mental health symptoms, [plaintiff's] psychological screening,

---

[4] The effects of mental health disorders are evaluated on a five-point scale ranging from "no limitation (none)" to "extreme limitation." See 20 C.F.R. pt. 404, Subpt. P, App. 1 § 12.00(F). In both state agency denials, the reviewing physicians state that there is "no evidence of limitation," as opposed to "no limitation (or none)," of plaintiff's "ability to understand and remember very short and simple instructions," or plaintiff's "ability to make simple work-related decisions." Id. at 78-79, 109-110. The physicians assessed the effects of plaintiff's mental disorder in all other categories as "not significantly limited," "moderately limited," or "markedly limited." Id. A statement that there is "no evidence of a limitation" is ambiguous at best, and additional evidence that the record has not been developed at worst. As there is no explanation from the ALJ as to how she resolved questions as to plaintiff's "ability to understand and remember very short and simple instructions," or plaintiff's "ability to make simple work-related decisions" where the state physicians noted that there was "no evidence of limitation" (as opposed to "no limitation (or none)"), the ALJ's reliance on these opinions is tenuous.

[plaintiff's] consistent reports of depression, his hospitalization for severe mental health symptoms, medications prescribed for mental health symptoms, and a recommendation from State Agency reviewers for a CE and the medical routine checkbox charting review of systems describing [plaintiff's] mental health symptoms."[5]  Dkt. # 20, at 4 (citing SSR 96-8p).

To be sure, the ALJ is not required to discuss every piece of evidence in her decision.  Wall v. Astrue, 561 F.3d 1048, 1067 (10th Cir. 2009).  The ALJ's decision will generally be found to be adequate where "it discusses the 'uncontroverted evidence' the ALJ chooses not to rely upon and any 'significantly probative evidence' the ALJ decides to reject."  Id. (quoting Frantz v. Astrue, 509 F.3d 1299, 1303 (10th Cir. 2007)).  However, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."  Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007).  Here, the ALJ did not discuss plaintiff's more severe diagnoses in her opinion.  Those diagnoses were present in the medical opinions the state agency physicians relied upon, which were the same opinions the ALJ found "very persuasive."  While the ALJ is entitled to resolve any conflicts in the record, here the ALJ did not

---

[5] Plaintiff identifies Dr. Cates as a treating physician, but the ALJ makes no mention of the issue.  When determining whether a claimant is disabled, the ALJ must evaluate every medical opinion in the record.  20 C.F.R. § 404.1527(b).  When evaluating a treating physician's opinion under § 404.1527, "the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct."  Brownrigg v. Berryhill, 688 F. App'x 542, 548 (10th Cir. Apr. 19, 2017) (quoting Krauser v. Astrue, 638 F.3d 1324, 1330 (10th Cir. 2011)).  First, the ALJ must determine whether the medical opinion qualifies for "controlling weight."  Id.  And, if not, the ALJ must assign a weight to that physician's opinion.  Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003).  Even where the sole issue before the court is "whether remand is required due to the ALJ's failure to conduct a proper treating physician analysis," the court will remand for that determination.  Smith v. Colvin, No. 13-CV-0269-CVE-TLW, 2014 WL 2216998, at *4 (N.D. Okla. May 29, 2014).  Given the above, on remand the ALJ should determine whether Dr. Cates is a treating physician, and whether his opinions are entitled to controlling weight.

12

resolve the issues of plaintiff's more severe diagnosis of major depressive disorder, in deciding plaintiff had the severe impairment of "unspecified depressive disorder." Id. In her decision, the ALJ simply decided, without discussion, to accord certain opinions from Family & Children's Services visits some weight (via the state physician's evaluations), and accord other opinions in those same records–those regarding plaintiff's major depressive disorder and severe substance abuse disorder–no specific evidentiary weight. Dkt. # 10, at 26. This type of cherry picking is not permissible. Haga, 482 F.3d at 1208.

Ultimately, relying on state agency physicians' assessments as "very persuasive" is error where those assessments contained requests for further evaluation, stated they lacked sufficient evidence to make certain determinations, and where the requests for further evaluation were not acknowledged by the ALJ.[6] Because the record was not adequately developed as to plaintiff's mental health impairments, questions remain as to whether her evaluations of those impairments were accurate. Further, the ALJ impermissible found certain evidence "very persuasive" in certain records, while ignoring evidence in those same records that favors defendant's claims of disability. Accordingly, the case must be remanded to further develop the record as to those issues.

As the ALJ did not fully develop the record with respect to plaintiff's mental health impairments, the Court finds it is not necessary to address plaintiff's other objections. The ALJ will need to reevaluate plaintiff's request in light of the new evidence.

---

[6] See also supra, note 4.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 19) is **rejected**, and the Commissioner's decision denying plaintiff's claim for disability benefits is **reversed and remanded**. A separate judgment is entered herewith.

**DATED** this 25th day of March, 2021.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE